**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| **JEREL HINES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:18-CV-2159** |
| | ) | |
| **JBR TRUCKING LLC and** | ) | |
| **CARRY TRUCKING SERVICES LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Plaintiff Jerel Hines'
Motion for Entry of an Order for Default, d/e 37, which the Court
construes as a Motion for Default Judgment. For the reasons that
follow, Plaintiff's Motion for Entry of an Order for Default is
GRANTED.

## I. BACKGROUND AND PROCEDURAL HISTORY

In June 2018, Plaintiff filed a Complaint[1] against JBR/Carry
Trucking alleging discrimination based on Plaintiff's race in

---

[1] Plaintiff filed his Complaint pro se. However, in October 2018, two attorneys
entered their appearances for Plaintiff (d/e 16, 17) and, in April 2019, a third
attorney entered an appearance for Plaintiff (d/e 26).

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. Compl., d/e 1. Plaintiff alleged race discrimination (Count I) and retaliation (Count II). Id. at 4–6. Plaintiff also brought a state law claim under the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq. Id. at 7. Plaintiff alleged that JBR was the successor/alter ego of Carry Trucking. Id. at 2.

The Complaint contains the following allegations. Plaintiff was hired on March 21, 2015, as a truck driver. Id. He was the only African American employee with the company. Id. at 3. During his employment, he complained about employees making racists comments against interracial dating amongst whites and blacks. Id. Plaintiff reported racial slurs to the owner, Carrie Bentley. Id. at 4. Plaintiff also reported to a human resources employee that an employee stated "white is right" in reference to another employee mentioning Plaintiff. Id. at 3. This same employee stated he would "get rid" of Plaintiff. Id. at 4. Ms. Bentley did not investigate, discipline, or otherwise remedy the racially hostile environment at the company. Id.

Plaintiff was a union employee subject to a collective bargaining agreement, under the terms of which, in the event of a layoff, employees with the most seniority were to be laid off last. Id. at 3. In October 2015, despite being the most senior employee with the company, Plaintiff was laid off while Plaintiff's white counterparts who were less senior to Plaintiff were not laid off. Id. On April 29, 2016, Plaintiff was fired without cause. Id. at 2, 4. According to Plaintiff, the purported reasons for his termination were a pretext for discrimination because Plaintiff did not engage in any of the conduct forming the purported basis for his termination. Id. at 5–6. Plaintiff also asserts that he was retaliated against for engaging in the statutorily protected activity of reporting and complaining of harassment, racism and unfair practices. Id. Plaintiff seeks compensatory damages for physical and mental injuries, future pecuniary losses, reimbursement of costs and attorney's fees, reinstatement of employment, expungement of any wrongdoing from Plaintiff's personal file, back pay, and front pay.

On August 27, 2018, counsel entered an appearance for "Defendants, CARRY TRUCKING SERVICES, LLC, an Illinois

Limited Liability Company, erroneously sued as CARRY TRUCKING and JBR TRUCKING LLC, a dissolved Illinois Limited Liability Company, erroneously sued as JBR." <u>See</u> Entry of Appearance (d/e 13).[2] Defendants moved to dismiss, asserting that Title VII only applies to businesses who employ fifteen or more employees for at least twenty weeks in a relevant calendar year and that Defendants did not employ fifteen or more people. Mot. to Dismiss, d/e 18. District Judge Colin S. Bruce—the judge assigned to the case until the case was transferred to the undersigned judge—denied the motion, noting that the fifteen-employee requirement was not jurisdictional and concluding that Plaintiff did not have to allege that Defendants employed at least fifteen employees to state a claim of racial discrimination. Text Order, Nov. 15, 2018. Judge Bruce refused to consider on a motion to dismiss the affidavit from the Managing Member of Defendants asserting that at no time did Defendants employ fifteen or more people, stating the argument was better suited for summary judgment.

---

[2] The Court notes that the Illinois Secretary of State website reflects that Carry Trucking Services, LLC was involuntarily dissolved on August 9, 2019. https://www.ilsos.gov/corporatellc/CorporateLlcController (last visited March 20, 2020).

On January 9, 2019, Defendants filed an Answer and Affirmative Defenses.  d/e 24.  The affirmative defenses were: (1) that Title VII only applies to businesses that employ fifteen or more employees for at least 20 weeks in a relevant calendar year, and (2) that that Plaintiff was never employed by Carry Trucking Services, LLC.

On May 7, 2019, counsel for Defendants moved to withdraw, d/e 29, asserting that irreconcilable differences had arisen.  On May 23, 2019, Magistrate Judge Eric I. Long granted the motion and directed Defendants' counsel to certify with the Court that she provided notice of the order to Defendants.  Text Order, May 23, 2019.  Judge Long advised Defendants that a corporation may not appear pro se and that Defendants must obtain new counsel on or before June 24, 2019.  Thereafter, counsel for Defendants filed two Certificates of Service, d/e 32, 34, reflecting that she served a copy of the Text Order on Defendants.  Once the Certificates of Service were filed, Judge Long terminated Defendants' former counsel from the case.  Text Order, June 25, 2019.

On June 25, 2019, Judge Long also issued an Order to Show Cause, d/e 35, to "Defendant" on or before July 9, 2019 for its failure to obtain counsel. Judge Long directed Defendants' former counsel to provide a copy of the Show Cause Order to "Defendant." Text Order, June 25, 2019. On July 15, 2019, Plaintiff filed a Motion for Entry of An Order for Default, d/e 36, due to Defendants' failure to file a show cause response by July 9, 2019. Judge Long granted the Motion, noting that "Defendant's" failure to find replacement counsel despite multiple warnings to do so constituted a "failure to otherwise defend the case" under Federal Rule of Civil Procedure 55(a). Judge Long granted Plaintiff twenty-one days to file a Motion for Default Judgment and directed Plaintiff to mail a copy of the Order to "Defendants" last known address. Text Order, July 16, 2019.

On July 29, 2019, Plaintiff filed a Second Motion for Entry of Default, d/e 37, which this Court construes as a motion for default judgment. Plaintiff sent a copy of Motion by certified mail to Jeff Bentley, Carry Trucking Services, LLC and to Carrie Boone a/k/a Carrie Bentley. See d/e 37 at 3.

That same day, former counsel for Defendants filed a Certification, d/e 38, noting that she provided notice to Defendants of the Court's June 25, 2019 Order to Show Cause by both regular and Certified mail but that the certified mail to Carry Trucking Services, LLC was marked as "UNCLAIMED" and returned.

On August 19, 2019, this Court entered a Text Order noting that the docket sometimes refers to a "defendant" and other times refers to "defendants." This Court also noted that the Entry of Default was entered against "JBR Carry Trucking" but that, when counsel entered an appearance for defendant, she identified Defendants as "Carry Trucking Services, LLC" and "JBR Trucking LLC." Text Order, Aug. 19, 2019. The Court directed Plaintiff to advise whether the Court can correct the docket to identify the Defendants as "Carry Trucking Services, LLC" and "JBR Trucking LLC." Id. The Court also asked Plaintiff to file a Certificate of Service showing that Plaintiff mailed a copy of the July 16, 2019, Text Order to Defendants' last known address, as directed by Judge Long. Id.

On August 26, 2019, Plaintiff filed a Motion to Correct the Docket.  d/e 39.  Plaintiff asserted that, when he filed his Complaint, he argued that the companies were intermingled and that each company employed him simultaneously.  Id. at 1. Through discovery, Plaintiff determined that JBR Trucking LLC, a dissolved Illinois Limited Liability Company, and Carry Trucking Services, LLC, a Limited Liability Company, were legally separate entities owned and managed respectively by Carrie Boone a/k/a Carrie Bentley and Jeffrey Bentley.  Id.  Plaintiff maintains that both companies employed his services at all relevant times.  Id. Plaintiff requested that the Court correct the docket to identify the Defendants as Carry Trucking Services, LLC and JBR Trucking, LLC.  This Court granted the Motion and directed the Clerk of the Court to correct the docket accordingly.  Text Order, August 28, 2019.

Plaintiff also filed a Certificate of Service, d/e 40, which reflected that he provided notice of the Court's July 16, 2019, Order by certified mail to the owners of the Defendants, Jeffrey Bentley and Carrie Boone a/k/a Carrie Bentley.  Service was effectuated on

Carrie Boone a/k/a Carrie Bentley. Certification of service to Jeffrey Bentley had yet to be returned and, according to UPS, Jeffrey Bentley has been unresponsive in their attempts to complete discovery.

The Court subsequently determined that a hearing to determine damages was required and directed Plaintiff to provide notice of the Court's order setting the hearing to Defendants. Text Order, September 13, 2019. Plaintiff filed certificates of service reflecting service on Carrie Boone a/k/a Carrie Bentley and Jeffrey Bentley on September 24, 2019, and October 8, 2019, respectively. See Certificates of Service, d/e 41, 42. The hearing on damages was ultimately held on November 18, 2019. Minute Entry, Nov. 18, 2019. Defendants did not appear for the hearing. See id. Following the hearing, Plaintiff filed a Written Closing Argument, d/e 47, and a Petition for Attorneys' Fees and Costs, d/e 48, in support of his pending Motion for Entry of an Order for Default. Plaintiff also sought, and was granted, leave to file a Motion to Cite Additional Authority, d/e 49, in support of the Petition for Attorneys' Fees.

## II. LEGAL STANDARD

Plaintiff moves for entry of an order of default and/or additional miscellaneous relief pursuant to Federal Rule of Civil Procedure 55.  Upon the entry of default, the Court accepts the facts set forth in the Complaint as true.  Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc., 722 F.2d 1319, 1323 (7th Cir. 1983) ("As a general rule, a default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint," so long as the plaintiff's allegations are well-pled.) (internal quotation marks omitted).  Upon default, while all well-pled allegations regarding liability are taken as true, allegations regarding damages are not.  Wehrs v. Wells, 688 F.3d 886, 892 (7th Cir. 2012).  A plaintiff seeking default judgment must establish a right to the requested relief.  In re Catt, 368 F.3d 789, 793 (7th Cir. 2004).  The district court cannot enter a default judgment without a hearing on damages unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits."  E360 Insight v. Spamhaus Project, 500 F. 3d 594, 602

(7th Cir. 2007) (quoting <u>Dundee Cement Co.</u>, 722 F.2d at 1323).

When a plaintiff's claim is not for a sum certain or a sum that can

be made certain, the Court may conduct hearings or make referrals

as it deems necessary to determine the amount of damages,

including directing an accounting.  Fed. R. Civ. P. 55(b)(2).  The

district court must then determine with reasonable certainty the

proper amount to award as damages to the prevailing party.  <u>In re

Catt</u>, 368 F.3d at 793.

## III. ANALYSIS

The Court finds that Defendants have failed to appear, plead

to, or otherwise defend the Complaint filed herein within the time

period prescribed by the Federal Rules of Civil Procedure and Local

Rules.  Accordingly, the allegations of liability contained in

Plaintiff's Complaint, Motion for Entry of an Order of Default, and

exhibits submitted in support thereof, taken as true, establish that

Defendants engaged in unlawful employment practices in violation

of Title VII of the Civil Rights Act of 1964.  Defendants intentionally

discriminated against Plaintiff on the basis of his race and in

retaliation for Plaintiff's complaints of racial harassment when Defendants terminated Plaintiff's employment.

Because the allegations regarding damages are not taken as true, and because the amount claimed is not liquidated or capable of ascertainment from definite figures contained in the documents or in affidavits, the Court determined that a hearing was necessary in this case. That hearing has now been held and Plaintiff's pending Motion for Entry of an Order for Default is ripe for ruling.

Plaintiff asks the Court to render a judgment of default for the statutory maximum of $50,000 for combined compensatory and punitive damages, as well as $140,523.00 in back pay plus $16,443.14 in pre-judgment interest. The court will grant these damages requests.

First, Plaintiff has submitted documentation clearly demonstrating that he is entitled to $156,966.14 in backpay. Plaintiff earned an average of $1,364.30 for each two-week pay period during the time he was employed by Defendants. Between the date of his termination and January 9, 2020, not counting the two pay periods during which Plaintiff was rehired, there were 103

pay periods.  Multiplying Plaintiff's average bi-weekly payment amount by the number of pay periods yields a total of $140,523.00 in back pay.

The prevailing party on a Title VII claim is also entitled to prejudgment interest on an award of back pay.  Hutchison v. Amateur Elec. Supply, Inc., 42 F.3d 1037, 1045 (7th Cir. 1994). Using the prime rate for the time period in question multiplied by the average amount Plaintiff would have earned had he not been terminated results in a total of $16,443.14 in pre-judgment interest.

Victims of intentional discrimination prohibited by Title VII may recover compensatory damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses."  42 U.S.C. § 1981A(b)(3).  Plaintiff requests an award of $50,000.00 for pain, suffering, inconvenience, and other nonpecuniary loss.  Compensatory and punitive damages for intentional discrimination are statutorily capped on the number of employees employed by the employer during the year of discrimination. 42 U.S.C. § 1981A(b)(3).  The total number of employees employed by Defendants was the subject of some dispute

in this litigation as discussed previously. Defendants, however, have abandoned this defense. And, as discussed in greater detail later, the Court would conclude that Defendants were a single employer employing more than fifteen employees for liability purposes anyway. Plaintiff appropriately requests the most conservative amount for these damages, which are capped at $50,000 for an employer that employs more than more than fourteen and fewer than 101 employees.

Here, the Court heard Plaintiff's sworn testimony at the hearing on damages. Plaintiff was the sole breadwinner for his family, supporting his wife and six children. Plaintiff testified that as a result of his termination he suffered economic damages which included the eviction of his family from their rented home and repossession of the family's car when Plaintiff could no longer make the payments on them. Plaintiff also testified to the emotional damage caused by these sudden and drastic changes to his quality of life. Plaintiff further testified that since his termination he suffered from anxiety, stress, and depression caused by the loss of what had been a stable and rewarding career. The circumstances

leading up to Defendants' discriminatory termination of Plaintiff were inherently humiliating and caused Plaintiff substantial emotional distress. The details provided by Plaintiff's testimony at the hearing on damages and the inherently degrading circumstances that Plaintiff experienced are sufficient to support the statutory maximum emotional distress award.  See EEOC v. HCS Med. Staffing, Inc., 2012 WL 529593, at * 3 (E.D. Wis. Feb. 17, 2012) (awarding statutory maximum in compensatory damages based on plaintiff's affidavit testimony demonstrating emotional distress).  Accordingly, the Court will award $50,000 in compensatory damages.

Finally, the Court concludes that Defendants should be treated as a single entity for purposes of liability.  Plaintiff alleges in his Complaint that "JBR is the successor or alter ego of CARRY TRUCKING."  Compl. 1.  While a defaulting party loses its ability to contest the factual basis for the moving party's claim, the defaulting party does not admit mere conclusions of law.  Jones v. Man 2 Men USA, No. 09-CV-4596, 2013 WL 5432819, at *7 (N.D. Ill. Sept. 30, 2013) (quoting Marshall v. Baggett, 616 F.3d 849, 852 (8th Cir.

2010)). "The single employer doctrine holds that when two entities are sufficiently integrated, they will be treated as a single entity for certain purposes." Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wis. & Its Local 5, 724 F.3d 939, 946 (7th Cir. 2013) (quoting Moriarty v. Svec, 164 F.3d 323, 332 (7th Cir. 1998)). To determine whether two nominally separate business entities are a single employer, the Court must examine four factors set out by the Supreme Court: "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." Trs. of Pension, Welfare, & Vacation Fringe Benefit Funds of IBEW Local 701 v. Favia Elec. Co., 995 F.2d 785, 788 (7th Cir.1993) (citing S. Prairie Constr. Co. v. Local No. 627, 425 U.S. 800, 803 (1976)). "No one of these factors is conclusive; instead, the decisionmaker must weigh the totality of the circumstances." Id. "Ultimately, single employer status . . . is characterized by the absence of an arm's length relationship found among unintegrated companies." Lippert Tile Co., 724 F.3d at 947 (quoting Lihli Fashions Corp., Inc. v. NLRB, 80 F.3d 743, 747 (2d Cir. 1996)).

The Court concludes that JBR Trucking, LLC, and Carry Trucking, LLC, are a single employer for purposes of liability. "When analyzing the interrelation of operations, it is the 'day-to-day operational matters' that are the most relevant." <u>Lippert Tile Co.</u>, 724 F.3d at 947. JBR Trucking, LLC, was legally owned by Jeffrey Bentley, while Carry Trucking, LLC, was owned by Jeffrey's wife Carrie Bentley. In response to interrogatories, Defendants admitted that Jeffrey Bentley was the manager of Carry Trucking. Pl.'s Written Closing Argument, Ex. D. The two companies shared an office and operations area, and Jeffrey Bentley was the primary manager for both companies. Supervisors and other employees also worked interchangeably for both companies. In fact, Plaintiff testified that during his employment the two companies were indistinguishable such that he was unsure which of the companies actually employed him and his coworkers. Plaintiff's well-pled allegations, which the Court accepts as true, show that under the totality of the circumstances, the two Defendants are sufficiently intertwined to be treated as a single employer.

## IV. PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS

Plaintiff also requests attorneys' fees in the amount of $30,515.00 and $163.71 in costs. Pl.'s Pet. For Attorneys' Fees and Costs 8, d/e 48. For the reasons that follow, the Petition is granted.

The starting point in the determination of a reasonable fee is a calculation of "the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The figure computed using this method is termed the "lodestar." Eddleman v. Switchcraft, Inc., 927 F.2d 316, 318 (7th Cir. 1991). The lodestar figure is presumed to be a reasonable fee award. Graham v. Sauk Prairie Police Comm'n, 915 F.2d 1085, 1109 (7th Cir. 1990). Thereafter, the court may adjust the figure to reflect various factors, including "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." Gastineau v. Wright, 592 F.3d 747, 748 (7th Cir. 2010); see also Tolentino v. Friedman, 46 F.3d 645, 652 (7th Cir. 1995) (listing the twelve factors courts should consider in determining attorney fees). The party seeking fees bears the burden of proving the

reasonableness of the hourly rate charged and the reasonableness of the hours worked.  <u>Spegon v. Catholic Bishop of Chicago</u>, 175 F.3d 544, 550 (7th Cir. 1999).

Plaintiff's Petition for Attorneys' Fees and Costs is supported by affidavits of Plaintiff's attorneys and billing records from Plaintiff's attorneys' law firm.  The affidavits set forth the time each attorney has expended on the case, the attorneys' typical hourly rates, and each attorney's background and experience.  Plaintiff's attorneys seek rates between $200 and $500 per hour.

Attorney Richard Dvorak seeks the highest rate at $500 per hour.  Attorney Dvorak has been a licensed attorney since 1999 and has handled hundreds of civil rights cases, including many employment cases.  Plaintiff has submitted a declaration from Attorney Louis Meyer attesting to the reasonableness of Attorney Dvorak's hourly rate.  Plaintiff also filed additional authority in which a District Court Judge in the Northern District of Illinois recently approved Attorney Dvorak's hourly rate.

Attorney Adrian Bleifuss Pardo seeks a rate of $350 per hour.  Attorney Bleifuss Pardo has been a licensed attorney since 2012,

concentrating in civil rights cases. Attorney Bleifuss Pardo's requested rate was recently agreed to in a settlement agreement reached in a case in the Northern District of Illinois.

Attorney Loren Jones seek a rate of $200 per hour. Attorney Jones was licensed in 2018 and has been employed by Plaintiff's attorneys' law firm since September 2018. Attorney Jones has submitted two declarations from attorneys who have worked with Attorney Jones on other cases attesting to the reasonableness of the rate sought. Attorney Jones ably represented Plaintiff in front of the undersigned at the hearing on damages.

These rates, although perhaps on the higher end for the Central District of Illinois, are in line with rates that have recently been approved in this District generally, and by this Court in particular. See, e.g., Donaldson v. MBR Cent. Illinois Pizza, LLC, No. 18-CV-3048, 2019 WL 4447969, at *3 (C.D. Ill. Sept. 17, 2019) (approving hourly rates ranging from $250 to $400); Abellan v. HRDS Le Roy IL, LLC, Case No. 16-1037, 2018 WL 6247260, at *10 (C.D. Ill. Nov. 29, 2018) (approving award of fees where attorneys and paralegals billed at rates between $150 and $400 per hour).

Plaintiffs' attorneys have pursued this litigation diligently, complying with numerous directives from the Court to ensure service on recalcitrant defendants. Moreover, the vast majority of the hours claimed—106.4 out of a total of 127.7—are attributed to Attorney Jones at the lowest of the rates sought. Attorney Dvorak and Attorney Bleifuss Pardo each seek fees for only 11.8 hours and 9.5 hours expended, respectively, at their higher rates. Plaintiff also seeks costs in the amount $163.71.

Taking into account Plaintiff's success in this litigation and the experience of Plaintiff's attorneys, the Court, therefore, finds the request for attorneys' fees and costs to be reasonable and appropriate for Plaintiff's attorneys' work in this litigation. Having carefully considered Plaintiff's Petition for Attorneys' Fees and Costs, the Petition is granted.

## V. CONCLUSION

Plaintiff's Motion for Entry of an Order for Default, d/e 37, is GRANTED. The Court awards Default Judgment for Plaintiff and against Defendants in the amount of $206,966.14. Plaintiff's Petition for Attorneys' Fees and Costs, d/e 48, is also GRANTED, for

a total of $30,515 in fees and $163.71 in costs.

The Clerk is directed to issue a judgment reflective of this

Order.

IT IS SO ORDERED.

CASE CLOSED.

**ENTERED:  March 24, 2020**

**FOR THE COURT:**

<u>**/s/Sue E. Myerscough**</u>
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**